THE PEOPLE OF THE STATE OF NEW YORK v. DISPENSARY AND HOSPITAL SOCIETY OF THE WOMEN'S INSTITUTE OF THE CITY OF NEW YORK.

(GENERAL TERM, THIRD DEPARTMENT, MARCH, 1873.)

An agreement made by one of the trustees of a corporation that if A. will .obtain an appropriation for it from the legislature he shall receive whatever amount may be appropriated in excess of a certain sum, was subsequently ratified by the board of trustees, who were cognizant of. the agreement, by the appropriation of the excess over the sum named to the payment of A., after he had obtained the legislative appropriation and the payment of the moneys to A. pursuant to the resolution,—*Held*, that these acts were such an abuse of the powers of the corporation as to constitute sufficient cause for its dissolution.

An answer to a complaint asking such relief and alleging the above facts, which does not deny them, but sets up merely that the trustees acted upon the advice of their counsel in making the payment, and that the board of trustees has been changed since the passage of the resolution by the election of new members, and·that the present board is competent to manage the affairs of the corporation, is frivolous.

MOTION for judgment upon answer as frivolous. The action was brought for dissolution of the defendants as a corporation.

The facts are stated in the following opinion, delivered by DANFORTH, J., at Special Term.

*Marcus T. Hun*, deputy attorney-general, for the People.

*Matthew Hale*, for the defendant.

DANFORTH, J. The defendant is incorporated under an act of the legislature of the State of New York, entitled "An act for the incorporation of benevolent, charitable, scientific and missionary societies, passed April 12th, 1848, and the acts amendatory thereof."

The particular business and object of the association, as claimed in the charter, are to ameliorate the sufferings of invalid women, by furnishing gratuitous treatment and advice to out-door patients, and by providing skillful medical and surgical treatment in the hospital, which shall include every appliance and remedial agent that promises to promote and hasten recovery; and upon such conditions as will render the benefits available to those for whom they are designed, regardless of the nationality or religious opinions of the applicant, and to train and educate respectable intelligent women, theoretically and practically, in all that pertains to the duties of a professional nurse.

Under an act passed April 28th, 1871, making appropriations to certain public and charitable institutions, the defendant received $7,500 from the State. The defendant was bound to properly and rightfully use said sum in the business and in the furtherance of the objects of said corporation.

The complaint alleges, among other things, that on or about the 2d of May, 1871, defendant passed and duly adopted the following resolution: "*Resolved*, That $2,500 be and the same is hereby appropriated to pay one Charles Thompson for services rendered the society, and the treasurer is hereby directed and empowered to pay the same from any

funds in her possession which belong to the Dispensary and Hospital Society." That under said resolution $2,500, being a part of the $7,500 appropriated by the State, was paid the person referred to by the resolution, and that said person rendered no service to said society, except to assist in inducing the legislature to grant the appropriation, and did this with the collusive and corrupt agreement with Leonora Jones, one of the trustees, that the said Thompson should be paid by defendant whatever sum should be appropriated in excess of the sum of $5,000; and that said sum of $2,500 was paid said Thompson under said resolution, which was passed by the trustees in confirmation of the acts of said Leonora Jones and said Thompson, which were well known to each and every one of the trustees at the time.

The complaint charges acts of extravagance in the purchase of expensive furniture, &c. The answer admits the receipt of the $7,500, and upon the conditions named in the complaint. It denies that any portion of it was squandered or wasted, or unlawfully expended. It alleges that the $2,500 was paid to Thompson for services actually rendered to defendant and in pursuance of advice of counsel that Thompson was legally entitled to the same.

It admits the agreement named in complaint was carried out and ratified by these trustees, and that the payment was made under said resolution. It denies the allegations of extravagance in purchasing expensive furniture, and denies the allegations not therein before admitted.

It also sets up that at a late election only three of the old trustees were elected, and that the present board are wholly competent to manage and attend to the affairs of the corporation.

The corporation was legally formed. Franchises may be forfeited by breach of the trust on which they were granted and perversion of the objects of the grant. The execution of the trust is a condition of the grant. Section 430 of the Code authorizes the bringing of an action to vacate the charter of a corporation in certain cases. The statute creating

the defendant defined the powers, duties and objects of the corporation. It contemplated a most praiseworthy charity. The people, by the act of appropriation of $7,500 to the society, gave the money to be faithfully and judiciously expended in the furtherance of the objects expressed in the charter. The complaint charges an intent to injure and defraud the people in the making of the agreement with Thompson, and alleges full knowledge of it by the trustees at the time of their ratification of it. The intent is not denied, and is charged as pervading the agreement and the acts under it.

Now, whether the contract with Thompson made between him and Leonora Jones, and ratified by the trustees, was void or not, as tainted with lobbying, I cannot decide, because the pleadings show only that he was to assist in inducing the legislature to make an appropriation, which expression or agreement may cover a legal or illegal consideration (see *Brown* v. *Brown*, 34 Barbour, 533), depending upon the nature of the influence used; but I think the bare making of the agreement with Thompson, the deliberate ratification of it by the board of trustees and the payment under it, with an admitted knowledge of its corrupt design, were an abuse of the power of the corporation.

To agree that for influencing the legislature (in any way) to appropriate a sum (which might be very large) Thompson could have the excess of that amount over $5,000 was a reckless disregard of the true interests of the corporation; and the fulfillment of the agreement as above stated was, in my opinion, an unwarranted use of the money—a perversion of the objects of the grant. There is no averment that the services of Thompson were worth that sum, or that in fact he performed any legal services, such as appearing before a committee of the assembly or senate, only that the $2,500 was paid under the advice of the then counsel of the board, that Thompson was entitled to it. The answer contains no denial or justification of the said agreement, which is alleged to have been made with intent and design to defraud the

People v. Dispensary and Hospital Society of the Women's Institute.

people. The denials of the answer go to portions of the complaint not necessary to prove to sustain the action. The allegation that only three of the old trustees were re-elected, and that the present trustees are competent to manage defendant's affairs, is clearly frivolous, and seems to imply a confession that the acts of the former trustees were censurable at least.

Every year the people of the State, with a generosity and policy that becomes a great and enlightened commonwealth, grant large sums of money to various institutions which were founded to elevate the degraded, to care for the sick and unfortunate, to lift burdens from thousands, in short, to benefit the whole State by making individual citizens better, stronger and happier. And the State has a right to require of the trustees of its bounty an expenditure of the moneys in strict accordance with the expressed object and aim of the institution. It will brook no diversion of the funds, nor tolerate any bargains by which any portion of the trust moneys may be lightly treated or improvidently used. By the act in which the $7,500 were intrusted to the defendant, the legislature appropriated about $1,000,000 to various institutions to ameliorate the condition of the unfortunate in every part of the State. Suppose for a moment that one-third of this amount had been diverted from the proper and intended channels, and had been paid to influence the legislature in their acts, how long would the people consent to sustain our noble charities?

I think it plain that these trustees have shown themselves unworthy of the trust, have abused their powers and forfeited their charter.

The motion is granted.

An appeal was taken to the General Term, and at the term above mentioned (present, MILLER, P. J., POTTER and DANIELS, JJ.) the order and judgment at Special Term affirmed.